UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BICKEL & BREWER
William A. Brewer III (WB 4805)
Alexander D. Widell (AW 3934)
767 Fifth Avenue, 50th Floor
New York, New York 10153
(212) 489-1400

LAW OFFICES OF P. KENT CORRELL
P. Kent Correll (PC 2609)
250 Park Avenue, 7th Floor
New York, New York 10177
(212) 475-3070

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLAGIRL LLC,

                    Plaintiff,           :    Civil Action No.:

   -v-

THE WELLA CORPORATION,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Willagirl LLC ("Plaintiff" or "Willagirl") files this Complaint against The Wella Corporation, upon personal knowledge concerning its own actions and on information and belief as to all other matters, as follows:

### I.

### NATURE OF THE ACTION

1.     This case involves a classic example of trademark bullying. The Wella Corporation has accused Willagirl, a start-up company named after the pre-teenage daughter of its founder, of infringing certain of its trademarks. The Wella Corporation has threatened to

embroil Willagirl in time-consuming and expensive litigation unless Willagirl withdraws all of its trademark applications in the United States and Canada.

2.      The Wella Corporation knows that its claims of infringement are frivolous, but, backed by its parent, the multinational Procter & Gamble Company, hopes to intimidate Willagirl into withdrawing its trademark applications.  None of Willagirl's trademarks, however, pose a genuine risk of commercial confusion. They neither look nor sound like The Wella Corporation's marks.  Moreover, in its entire 80-year existence, The Wella Corporation has not marketed a product line that consisted of anything other than shampoos, conditioners and related hair care items.  Willagirl, on the other hand, intends to market safe and gentle skincare products for the specific needs of pre-teenage girls.

3.      Indeed, Willagirl's trademark applications, filed over a year ago, were subject to a rigorous regulatory approval process that included a "likelihood of confusion" analysis.  Neither the United States Patent and Trademark Office nor the Canadian Intellectual Property Office found the Willagirl trademarks likely to be confusing with The Wella Corporation's trademarks. Moreover, the Willagirl trademark applications were all allowed after publication in the *Trademark Official Gazette* and received no objections during the opposition period by any third party, including The Wella Corporation.

4.      Accordingly, faced with the threat of an expensive, albeit frivolous, lawsuit, Willagirl is forced to bring this action pursuant to 28 U.S.C. §§ 2201 and 2202 for a declaratory judgment that it is not infringing The Wella Corporation's trademarks.

## II.

## THE PARTIES

5.      Plaintiff Willagirl LLC is a New York limited liability corporation with its principal place of business in New York, New York.  Willagirl was formed in November 2008,

2

and is engaged in the business of providing pre-teen girls with healthy and cancer-preventing skincare products.

      6.     Defendant The Wella Corporation is a Delaware corporation with its principal place of business in Woodland Hills, California.  The Wella Corporation is engaged in the manufacture and sale of hair care preparations (such as shampoos, hair dyes and tints, permanent waves, hair conditioners, and setting lotions) and scalp treatments.  The Wella Corporation is a subsidiary of The Proctor & Gamble Company.

### III.

### JURISDICTION AND VENUE

      7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 2201.

      8.     This Court has personal jurisdiction over The Wella Corporation because it has substantial, continuous, and systematic contacts with the State of New York, has availed itself of the privilege of conducting activities in the State of New York and, through the use of a cease-and-desist letter sent into New York, has attempted to intimidate and coerce a New York company into surrendering valuable trademarks by threat of economic harm.

      9.     Venue is appropriate in this district under 28 U.S.C. § 1391(b) because it is the judicial district in which a substantial part of the events and omissions giving rise to the claims occurred.

### IV.

### FACTUAL BACKGROUND

**A.**    **An Idea Is Born:  Healthy Skin Care Products For Pre-Teenage Girls**

      10.    During bath time on an afternoon in August, 2008, 8-year Willa Doss told her mother that she disliked the "babyish" soaps, shampoos and creams she was using, and asked if

she could have products for girls her age. The girl's request struck a chord with her mother, Christy Prunier, who had suffered significant skincare issues for much of her life.

11. Christy agreed that her daughter, and other "tween" girls like her, should have their own skincare products that are safe and gentle and, together, they searched the marketplace for such products. To their surprise and disappointment, they could not find any.

12. It was during that time in late Summer of 2008 that Christy and Willa embarked on a venture to produce and launch a line of smart skincare products for pre-teen girls. Naturally enough, they decided to call their fledgling company "Willagirl."

**B.    Efforts To Develop and Launch the Willagirl Line Of Products**

13. Willagirl, through Ms. Prunier and Willa, devoted the next two and a half years to painstaking manufacturing and marketing efforts.

14. In September 2008, based on its focus on skincare emulsions rather than color cosmetics, Willagirl chose Cosmetic Essence Innovation ("CEI"), a personal care lab, to manufacture its products. In November 2008, Christy Prunier and Willa met with CEI's Vice-President to discuss the company's product needs and, by December 2008, CEI had manufactured product samples which it sent to Christy and Willa to review. That process of development and review has been ongoing and refined over the past two and a half years, as each new product was perfected.

15. During this period, Willagirl also began working with a fragrance technology company to develop scents for its products.

16. Having found the right manufacturers for its products, Willagirl engaged in intensive marketing efforts. For example, in November 14, 2008, Ms. Prunier attempted to buy the internet domain name "Willa.com." Unfortunately, the name was already registered to a woman named Willa Cline, who owned the site since 1996. After Ms. Prunier was unsuccessful

in convincing Ms. Cline to sell the name, she purchased several other "Willa" domains, including one currently in use named "willaskincare.com."

17.     In January 2009, Ms. Prunier began holding informational meetings with industry professionals and private equity groups to explore brand positioning of Willagirl's products. Through sheer determination and passion to bring those products to market effectively, Ms. Prunier met with executives from several highly successful retail companies.

18.     Ms. Prunier and her colleagues conducted several focus groups in order to further position the company's products for launch and, as stated below, received their feedback on not only the company's products, but also the company's proposed logo.

19.     In addition, in order to ensure that Willagirl's products were safe – a concern that went to the heart of Willagirl's mission – the company retained a high profile dermatologist.

20.     Ms. Prunier also engaged the help of consultants and friends to assist in the marketing and development of Willagirl. For example, Ms. Prunier hired a brand consultant to help define Willagirl's launch strategy and to create presentations for potential investors. Willagirl also retained Creative Comps to produce retail production quality samples of several of Willagirl's products. Ms. Prunier distributed these retail "leave behinds" to beauty and retail executives for feedback both on the product and the packaging. Their reactions have been overwhelmingly positive and enthusiastic.

C.     **Willagirl's Trademark Applications**

21.     As part of Willagirl's marketing strategy, Christy Prunier and Willa designed trademarks for the products they intend to sell. In designing a suitable logo, Ms. Prunier and her Willa surveyed focus groups of preteen girls.

22.     Between June 2009 and February 2010, Willagirl filed five intent-to-use trademark applications with the United States Patent and Trademark Office (the "USPTO"). The

trademarks were assigned the following identification numbers, and shall sometimes be referred to herein as the "Willa Marks":

    a.    Serial No. 77929085;

    b.    Serial No. 77799443;[1]

    c.    Serial No. 77765489;

    d.    Serial No. 77765472; and

    e.    Serial No. 77799465.

23.    The Willa Mark designated Serial No. 77929085 consists of the word "WILLAGIRL" in standard characters. The products associated with the mark are aromatherapy body care products, namely, body lotion, shower gel, cuticle cream, shampoo, conditioner, non-medicated lip balm, soap, body polish, body and foot scrub and non-medicated foot cream.

24.    The Willa Mark designated Serial No. 77799443 consists of the design of a girl's head facing forward with long eyelashes and long hair, within an oval cameo with the border formed by connected shaded semicircles, and the term "WILLA" in stylized form above the design. The products associated with the mark are bath foams, beauty creams and lotions for face and body care, beauty serums, face and body washes, non-medicated lip balm, lip gloss, perfume, skin moisturizers, sun care lotions, face and body shimmer lotions and sticks.

25.    The Willa Mark designated Serial No. 77765489 consists of the design of a girl's head facing forward with long eyelashes and long hair, within the design of an oval cameo with the border formed by connected shaded semicircles, and the term "WILLA" in stylized form above the design, and the words "WILLA DAILY" in stylized form below the design. The

---

[1]  Willagirl also filed an application for this mark with the Canadian Intellectual Property Office. The mark was assigned application number 1468591.

products associated with the mark are bath foams, beauty creams for body care, beauty serums, body washes, hair conditioners, lip balm, lip gloss, perfume, shampoo-conditioners, shampoos, skin moisturizer, sun care lotions and sun-block lotions.

26.    The Willa Mark designated Serial No. 77765472 consists of the design of a girl's head facing forward, with heart sunglasses and long hair, within the design of a cameo with the border formed by connected shaded semicircles, the term "WILLA" in stylized form above the design, and the words "WILLA SUN" in stylized form below the design.   The products associated with the mark are bath foams, beauty creams for body care, beauty serums, body washes, hair conditioners, lip balm, lip gloss, perfume, shampoo-conditioners, shampoos, skin moisturizer, sun care lotions and sun-block lotions.

27.    The Willa Mark designated Serial No. 77799465 consists of the design of a girl's head facing forward with long eyelashes and long hair, within the design of an oval cameo with the border formed by connected shaded semicircles, and the term "WILLAGLO" in stylized form above the design.   The products associated with the mark are bath foams, beauty creams and lotions for face and body care, beauty serums, face and body washes, non-medicated lip balm, lip gloss, perfume, skin moisturizers, sun care lotions and sticks, and face and body shimmer lotions and sticks.

28.    The USPTO conducted a likelihood of confusion analysis with respect to each of the Willa Marks.  Between March 1, 2010, and March 13, 2010, the USPTO notified Willagirl that, with respect to each of the Willa Marks, there was no reason to refuse registration because, *inter alia*, there was no likelihood of confusion with any other registered trademark or trademark application.

29.     Pursuant to the next step in the registration process, between April 6, 2010, and April 20, 2010, the USPTO published each of the Willa Marks in the *Trademark Official Gazette*. After publication, anyone who believed that they would be harmed by the proposed trademark registrations was permitted to file an objection, within the 30-day publication period, with the Trademark Trial and Appeal Board.

30.     No one filed an opposition to any of the Willa Marks, including The Wella Corporation.

31.     Between June 1, 2010, and June 15, 2010, Willagirl received a Notice of Allowance from the USPTO for each of the Willa Marks. In addition, the trademark identified as Serial No. 77799443 was approved by the Canadian Intellectual Property Office (under application no. 1468591), after a notice and opposition period.

32.     Thereafter, Willagirl continued to expend vast amounts of time and money readying its products for an early-2011 launch.

**D.     The Additional Intent-To-Use Trademark Applications**

33.     In addition, on January 27, 2011, Willagirl filed two additional intent-to-use trademark applications with the USPTO. Those trademarks applications were assigned Serial Nos. 85227863 and 85227898.

34.     The trademark application designated Serial No. 85227863 consists of the design of a girl's head facing forward with long eyelashes and long hair, within an oval cameo with the border formed by connected shaded semicircles, and the term "WILLA" in stylized form above the design. The products associated with the mark are body and beauty care cosmetics, namely, non-medicated acne treatments, hair shampoo and conditioner, nail polish, deodorant, mascara, makeup, eye shadow, and blush, all for preteen and teenage girls.

35.     The trademark application designated Serial No. 85227898 consists of the design of a girl's head facing forward with long eyelashes and long hair, within an oval cameo with the border formed by connected shaded semicircles, and the term "WILLA" in stylized form above the design.  The products associated with the mark are imitation and inexpensive jewelry for preteen and teenage girls, namely, charms, bracelets, necklaces, and rings.

**E.     Willa's Dream Comes True**

36.     In January 2011, Willa's dream became a reality when a high profile retailer selected "Willa Smile Balm" to sell in its stores and catalog.  In addition, another major retailer expressed a strong interest in carrying the full line of Willagirl products.

37.     Moreover, in February 2011, a boutique in New York City agreed to sell Willagirl's products.

**F.     The Cease and Desist Letter:  A Clear Case of Trademark Bullying**

38.     By letter dated January 31, 2011, the Wella Corporation, through its attorneys, sent a letter to Willagirl's attorney that demanded that Willagirl withdraw all of its trademark applications for the Willa Marks in the United States and Canada (the "Cease and Desist Letter").

39.     The Cease and Desist Letter came as a shock to Willagirl as its Willa Marks had been approved by the USPTO after a likelihood of confusion analysis and an opposition period that resulted in no objections to the marks.

40.     The Cease and Desist Letter stated that the Willa Marks are similar to those of Wella "in sound and appearance and are proposed for use in connection with, among other things, hair care preparations which are identical to [the Wella Corporation's] goods."  (Letter from J. Michael Hurst to Lisa Krizman, Esq., dated January 31, 2011, a true and correct copy of which is attached hereto as Exhibit A.)  The Cease & Desist Letter further stated that Willagirl's

9

"use and/or registration of the WILLA Marks is likely to cause confusion as to source, origin, association and/or affiliation with" The Wella Corporation's marks.

41.    In a transparent attempt to scare Willagirl into withdrawing its trademark applications, the Cease and Desist Letter was also sent on behalf of The Wella Corporation's parent, The Proctor & Gamble Company (which does not even own the marks at issue), the multinational giant.  Indeed, the Cease and Desist Letter stated in no uncertain terms that it would drag the fledgling Willagirl into time-consuming and expensive litigation if Willagirl refused to withdraw its trademark applications.

42.    The Cease and Desist Letter demanded a response from Willagirl by February 11, 2011.

43.    By letter dated February 11, 2011, Willagirl, through its counsel, responded to the Cease and Desist Letter (the "Response Letter").  The Response Letter stated, among other things, that the Willa Marks create a materially different commercial impression than those of the marks The Wella Corporation uses in connection with its hair care and scalp treatment products, and that each of the Willa Marks had been approved by the USPTO after a "likelihood of confusion" analysis and subsequent publication period.  (*See* Letter from William A. Brewer III to J. Michael Hurst, dated February 11, 2011, a true and correct copy of which is attached here as Exhibit B.)

44.    The Response Letter also assured The Wella Corporation that "Willagirl has not made any attempt to misappropriate Wella's goodwill or cause consumer confusion, and that Willagirl chose the marks because 'Willa' is the name of the preteen daughter of Willagirl's founder.

**G.** **Willagirl's Trademarks Are Not Likely To Cause Confusion With Wella's Trademarks**

45. The Wella Corporation owns ten registered U.S. trademarks containing the term "Wella." As demonstrated by the USPTO's approval of the Willa Marks, Willagirl's products do not create a likelihood of confusion with respect to the products marketed by The Wella Corporation.

46. Initially, as reflected on its website and in its marketing materials, The Wella Corporation's products are exclusively hair care related and marketed to adult women in their twenties and older who have hair care needs.

47. By contrast, Willagirl's target market is girls between the ages of eight and thirteen, and its marketing slogan, "Start young. Stay young," was developed to appeal to preteen girl consumers. Willagirl's slogan is consistent with its other marketing materials, which emphasize that its products are designed to be a safe and quality skincare choice for preteen girls. Indeed, the company was founded for the specific purpose of addressing the as yet unmet needs of girls of this age for quality skincare products.

48. Consistent with its mission, Willagirl's core product line consists of beauty creams and lotions for face and body care, beauty serums, face and body washes, non-medicated lip balm, lip gloss, skin moisturizers, shower gel, body polish, sun care lotions, sun block lotions, cuticle cream, body and foot scrub, and non-medicated foot cream. The Wella Corporation has not marketed any of those products in its 80-year history. Shampoos and conditioners are only a small fraction of Willagirl's product line, and they do not feature prominently in its promotional and marketing materials.

49.     Thus, there is little or no risk, much less a "likelihood", that consumers will confuse Willagirl's products as being owned, sponsored, or originating with The Wella Corporation.

50.     Moreover, only three of the Wella Corporation's trademarks include a design component. Its other seven trademarks are simply word marks consisting of the word "Wella" in various fonts, some with accompanying language.

51.     The three trademarks of the Wella Corporation that do contain a design component depict adult women, in profile, who appear to be blowing their long, flowing hair. The depictions of hair in those designs dominate and take up considerably more space than the women's faces. Thus, The Wella Corporation's trademarks are associated in the minds of consumers with hair care products for adult women.

52.     The Willa Marks, on the other hand, are designed to resonate with Willagirl's intended market of pre-teenage girls, and contain a highly-stylized design with distinctive graphic elements: a young girl facing forwards, with either long eyelashes or wearing heart sunglasses. In short, the Willa Marks, which do not even remotely resemble those of The Wella Corporation, create a materially different commercial impression.

53.     Moreover, Willagirl adopted the term "Willa" in good faith, and had no intention of infringing, and does not so infringe, upon any rights of The Wella Corporation. It was 8-year old Willa Doss, the daughter of Willagirl's founder, who inspired her mother to create the company and market its healthy skincare products to girls her age.

## V.

## CLAIMS FOR RELIEF

**A.**   **Count One:  Declaratory Judgment Of Non-Infringement**

54.   Willagirl repeats and realleges the allegations set forth in Paragraphs 1 through 53 hereof as if fully set forth herein.

55.   Willagirl's request for declaratory judgment is authorized by 28 U.S.C. §§ 2201 and 2202.

56.   An actual controversy exists between the parties relating to whether Willagirl's trademarks infringe on The Wella Corporation's trademarks.  The Wella Corporation has sent Willagirl a Cease and Desist Letter that contends that the Willa Marks infringe upon The Wella Corporation's marks, and that threatens expensive and time consuming litigation unless Willagirl withdraws its application for each of its marks in the United States and Canada.

57.   Willagirl does not intend to withdraw its trademark applications.  Rather, as demonstrated by all of its developmental and marketing efforts over the past 2 ½ years, Willagirl has a definite intent to use, imminently, the Willa Marks in marketing and commerce.

58.   In light of the foregoing, Willagirl has a real and reasonable apprehension that The Wella Corporation will bring a lawsuit against it for trademark infringement.  Accordingly, Willagirl has initiated this action for the purposes of seeking declaratory relief and resolution concerning its right to use the Willa Marks in connection with its marketing and distribution of Willagirl's products.

## VI.

## DEMAND FOR TRIAL BY JURY

59.   Plaintiff hereby demands a trial by jury on all issues so triable.

## VII.

### DEMAND FOR RELIEF

WHEREFORE, plaintiff Willagirl LLC respectfully asks this Court for an order and judgment against defendant The Wella Corporation and to award Willagirl the following relief:

1.      A judgment declaring that Willagirl's trademark designated USPTO Serial No. 77765489 does not infringe any trademark owned by defendant The Wella Corporation;

2.      A judgment declaring that Willagirl's trademark designated USPTO Serial No. 77765472 does not infringe any trademark owned by defendant The Wella Corporation;

3.      A judgment declaring that Willagirl's trademark designated USPTO Serial No. 77799443 does not infringe any trademark owned by defendant The Wella Corporation;

4.      A judgment declaring that Willagirl's trademark designated USPTO Serial No. 77799465 does not infringe any trademark owned by defendant The Wella Corporation;

5.      A judgment declaring that Willagirl's trademark designated USPTO Serial No. 777929085 does not infringe any trademark owned by defendant The Wella Corporation;

6.      A judgment declaring that Willagirl's trademark designated USPTO Serial No. 85227863 does not infringe any trademark owned by defendant The Wella Corporation;

7.      A judgment declaring that Willagirl's trademark designated USPTO Serial No. 85227898 does not infringe any trademark owned by defendant The Wella Corporation;

8.      A judgment declaring that Willagirl's trademark designated Canadian Intellectual Property Office application number 1468591 does not infringe any trademark owned by defendant The Wella Corporation;

9.      An award of reasonable attorneys' fees and costs; and

10.     Such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

**BICKEL & BREWER**

By: _____

William A. Brewer III (WB 4805)
Alexander D. Widell (AW 3934)
767 Fifth Avenue, 50th Floor
New York, New York 10153
Telephone:  (212) 489-1400
Telecopier:  (212) 489-2384

**LAW OFFICES OF P. KENT CORRELL**
P. Kent Correll (PC 2609)
250 Park Avenue, 7th Floor
New York, New York 10177
Telephone:  (212) 475-3070
Telecopier:  (212) 475-2378

**ATTORNEYS FOR PLAINTIFF
WILLAGIRL, LLC**

Dated: New York, New York
          February 15, 2011

15

# Exhibit A



**KMK** | Keating Muething & Klekamp PLL
ATTORNEYS AT LAW

**J. MICHAEL HURST**
DIRECT DIAL: (513) 562-1401
FACSIMILE: (513) 579-6457
E-MAIL: MHURST@KMKLAW.COM

January 31, 2011

Via Email: *lisakrizman@krizmanlaw.com*
and Regular U.S. Mail

Lisa Krizman, Esq.
Krizman Law, LLC
1930 East Marlton Pike, Bldg Q
Cherry Hill, New Jersey 08003

Re:   Trademark Applications Owned by Willagirl LLC

Dear Ms. Krizman:

This firm is intellectual property counsel to The Wella Corporation ("Wella") and its parent, The Procter & Gamble Company. As you are probably aware, Wella is the owner of the famous WELLA brand for hair care preparations and scalp treatment products. Wella own several federal trademark registrations for its WELLA brand, including U.S. Registration Nos. 0575177, 0979071, 1642546, and others, and its Canadian affiliate, Wella Canada, Inc. owns Canadian Registration No. UCA19677, and others (the "WELLA Marks"). Wella has used its trademark for nearly 80 years. It has invested many millions of dollars in advertising its mark during that time and has achieved hundreds of millions of dollars in sales. It maintains a website for this brand at *<wella.com>*. We are certain you can appreciate the value our client places on its long-standing and famous WELLA brand.

It has come to our client's attention that your client, Willagirl LLC ("Willagirl"), has recently filed a number of applications in the United States and Canada for WILLA-formative marks for use in connection with, among other things, hair care preparations. These applications are as follows:

| Mark | Goods | Status |
|------|-------|--------|
| WILLAGIRL | Aromatherapy body care products, namely, body lotion, shower gel, cuticle cream, shampoo, conditioner, non-medicated lip balm, soap, body polish, body and foot scrub and non-medicated foot cream | Allowed Ser.No. 77/929085 |

Lisa Krizman, Esq.
January 31, 2011
Page 2

| Mark | Goods | Status |
|------|-------|--------|
| WILLA and Design<br> | Bath foams; beauty creams and lotions for face and body care; beauty serums; face and body washes; non-medicated lip balm; lip gloss; perfume; skin moisturizers; sun care lotions; face and body shimmer lotions and sticks | Allowed<br>Ser.No. 77/799443 |
| WILLA WILLA DAILY and Design<br> | Bath foams; beauty creams for body care; beauty serums; body washes; hair conditioners; lip balm; lip gloss; perfume; shampoo-conditioners; shampoos; skin moisturizer; sun care lotions; sun-block lotions | Allowed<br>Ser.No. 77/765489 |
| WILLA WILLA SUN and Design<br> | Bath foams; beauty creams for body care; beauty serums; body washes; hair conditioners; lip balm; lip gloss; perfume; shampoo-conditioners; shampoos; skin moisturizer; sun care lotions; sun-block lotions | Allowed<br>Ser.No. 77/765472 |
| WILLAGLO and Design<br> | Bath foams; beauty creams and lotions for face and body care; beauty serums; face and body washes; non-medicated lip balm; lip gloss; perfume; skin moisturizer; sun care lotions and sticks; face and body shimmer lotions and sticks | Allowed<br>Ser.No 77/799465 |
| WILLA & DESIGN<br> | Bath foams; beauty creams and lotions for face and body care; beauty serums; face and body washes; non-medicated lip balm; lip gloss; perfume; skin moisturizers; sun care lotions; face and body shimmer lotions and sticks. | Canada<br>Allowed<br>Ser.No. 1468591 |

Lisa Krizman, Esq.
January 31, 2011
Page 3

All of the foregoing are hereinafter referred to as the "WILLA Marks."

Your client's WILLA Marks are similar to our client's WELLA Marks in sound and appearance and are proposed for use in connection with, among other things, hair care preparations which are identical to our client's goods. As such, use and/or registration of the WILLA Marks is likely to cause confusion as to source, origin, association, and/or affiliation with the WELLA Marks and Wella. Accordingly, we hereby demand that Willagirl expressly withdraw all of the above-referenced applications for the WILLA Marks, in both the United States and Canada, at its earliest opportunity. It is our hope that your client will agree to resolve this matter amicably without our client being forced to resort to engaging in lengthy and expensive alternative measures to protect its valuable trademark rights.

Given the importance of this matter to our client, we ask that you contact the undersigned by the close of business Friday, February 11, 2011 to confirm that you are taking the necessary steps to comply with our client's demands. We look forward to hearing from you.

Very truly yours,

KEATING MUETHING & KLEKAMP PLL

By: _____
J. Michael Hurst

3779516.1

# Exhibit B

BICKEL & BREWER

ATTORNEYS AND COUNSELORS
767 FIFTH AVENUE
50TH FLOOR
NEW YORK, NEW YORK  10153
PHONE  (212) 489-1400
FAX:  (212) 489-2384

www.bickelbrewer.com

4800 COMERICA BANK TOWER
1717 MAIN STREET
DALLAS, TEXAS  75201
(214) 653-4000

February 11, 2011

**BY EMAIL**

J. Michael Hurst, Esq.
Keating, Muething & Klekamp PLLL
One East Fourth Street Ste. 1400]
Cincinnati, OH 45202-3752

    Re:    <u>Willagirl LLC</u>

Dear Mr. Hurst:

    We represent Willagirl LLC ("Willagirl"). We write in response to your letter to Lisa Krizman, dated January 31, 2011 (the "Demand Letter"), sent on behalf of The Wella Corporation ("Wella") and The Procter & Gamble Company. Your letter demands that Willagirl withdraw all of its trademark applications in the United States and Canada based on the allegation that Willagirl's trademarks are similar to those of Wella "in sound and appearance and are proposed for use in connection with, among other things, hair care preparations which are identical to [Wella's] goods."[1] Based on that alleged similarity, it is your further contention that Willagirl's "use and/or registration of the WILLA Marks is likely to cause confusion as to source, origin, association and/or affiliation with" Wella's marks.[2]

    Willagirl has no desire to infringe any marks owned by Wella. As such, our client has carefully analyzed the claims asserted in the Demand Letter. Its assessment, however, indicates that Willagirl's trademarks are not likely to cause confusion with your client's hair care and scalp treatment products. Initially, it should be noted that each of Willagirl's trademark applications, filed over a year ago, was subject to a rigorous regulatory approval process that

---

[1]  *See* letter from J. Michael Hurst to Lisa Krizman, Esq., dated January 31, 2011, at 3. It is unclear from the Demand Letter whether the trademarks of Wella that you have specifically identified by registration number are the only marks which you claim Willa is infringing. If there are other trademarks owned by Wella that you claim are being infringed, please provide us with the registration numbers of those trademarks.

[2]  *Id.*

J. Michael Hurst, Esq,
February 11, 2011
Page 2

included a "likelihood of confusion" analysis. Neither the United States Patent and Trademark Office nor Canadian Trademark Offices found the Willagirl trademarks likely to be confusing with Wella's trademarks. Moreover, the Willagirl trademark applications were all allowed after publication in the *Trademark Official Gazette*, and received no objections during that time by any third party, including Wella.

In addition, please consider, *inter alia*, the following factors:

*First*, the appearance of Willagirl's marks are not remotely similar to the appearance of Wella's marks. The Willagirl marks contain a highly stylized design of a young girl in a cameo with distinctive graphic elements. Willagirl's intended market is primarily skin care for preteen girls, and the Willagirl graphic was chosen to depict a young girl for that purpose. (The mission of Willagirl is to provide young girls with healthy and cancer preventing skin care products.) In contrast, Wella's marks incorporate a very different type of graphic, which emphasizes the hair of an adult woman. Moreover, the sound of Willagirl's marks – particularly Willagirl and Willaglo – are not likely to create consumer confusion, especially when coupled with the distinctive appearance of the marks.

*Second*, the overwhelming majority of products with which Willagirl's trademarks are associated are different than the products sold by Wella. As stated above, Willagirl's intended market is primarily skin care for preteen girls. Among the products it intends to sell are bath foams, beauty creams and lotions for face and body care, beauty serums, face and body washes, non-medicated lip balm, lip gloss, perfume, skin moisturizers, sun care lotions and sticks, and face and body shimmer lotions and sticks. Wella does not sell any of those products. Rather, and as you state in the Demand Letter, Wella is in the business of selling hair care preparations and scalp treatment products.[3] The different categories of products – i.e., cosmetics and hair care products – are too disparate to cause consumer confusion.

*Third*, Willagirl has not made any attempt to misappropriate Wella's goodwill or cause consumer confusion. Willagirl chose the marks because "Willa" is the name of the preteen daughter of Willagirl's founder.

In sum, Willagirl's marks create a materially different commercial impression than those of Wella and Wella's threat of expensive and time-consuming litigation unless Willagirl withdraws all of its applications appears to be an attempt to enforce trademark rights beyond a reasonable interpretation of the scope of the rights granted to it.

---

[3] Willagirl also intends to sell shampoos and conditioners (along with the other products listed above that Wella does not sell) under its Willa, Willa Willa Daily, and Willa Willa Sun marks. For the reasons stated above, we believe that those marks are sufficiently different from the Wella mark so as not to create a risk of consumer confusion.

J. Michael Hurst, Esq,
February 11, 2011
Page 3

Sincerely,

*William A. Brewer III /ins*
*ADW*

William A. Brewer III

5235995.1
0500-02